**Rick MORRIS, Individually, As Representative of the Estate of Gaylynn Morris, and as Next Friend of Sabrina Morris and Savanna Morris, Minors**

v.

**CITY OF ALVIN, TEXAS.**

**Civil Action No. G–96–484.**

United States District Court, S.D. Texas, Galveston Division.

Jan. 16, 1997.

Joel M. Androphy, Berg & Androphy, Houston, TX, for Rick Morris.

William Scott Helfand, Hirsch, Robinson, Sheiness & Glover, P.C., Houston, TX, for City of Alvin, Texas.

### ORDER GRANTING MOTION TO DISMISS

KENT, District Judge.

This section 1983 action arises out of the arrest of the Decedent, Gaylynn Morris, and her subsequent death allegedly caused by a failure to provide adequate medical attention to the Decedent while being held at the Alvin City Jail. Now before the Court is Defendant's Motion to Dismiss, dated September 23, 1996. For the reasons stated below, the Motion is **GRANTED.**

When considering a Rule 12(b)(6) motion to dismiss, the Court must assume the truthfulness of the allegations in Plaintiffs' Complaint. *Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). The motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061 (5th Cir.1994).

The Plaintiffs' Complaint states the following facts in support of its § 1983 claims. On or about September 15, 1994, the Alvin Police Department received a complaint that Gaylynn Morris had stolen some drugs from her employer, the Low Cost Pet Clinic. On the morning of September 22, 1994, Alvin Police Officers arrested Gaylynn Morris, placing her in a cell at the Alvin City Jail. At approximately 1:30 p.m. on September 22, 1994, Mrs. Morris fell from her bunk in the cell, cutting her head. City of Alvin Emergency Medical Services ("EMS") personnel were called to the jail to treat Mrs. Morris' head injury. The EMS personnel left the jail at approximately 2:00 p.m., without transporting Mrs. Morris to the hospital for any further medical attention. At approximately 4:55 p.m. on September 22, 1994, EMS was again called to the jail because Mrs. Morris had been throwing up blood. Mrs. Morris was then transported to the Alvin Community Hospital at 5:20 p.m. Mrs. Morris died at 6:20 p.m. on September 22, 1994.

Section 1983 provides that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects or causes to be subjected, any ... person within the jurisdiction [of the United States] to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Therefore, an actionable § 1983 claim must allege a deprivation of rights secured by the Constitution by a person acting under color of state law. *Daniels v. Williams,* 474 U.S. 327, 329–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Evans v. City of Marlin,* 986 F.2d 104, 107 (5th Cir. 1993), *disagreed with on other grounds, Hare v. City of Corinth, MS,* 74 F.3d 633 (5th Cir.1996).

Although municipalities are "persons" within the meaning of § 1983, they may only be held liable if the constitutional harm suffered was the result of an "official policy, custom, or pattern." *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–37, 2039, 56 L.Ed.2d 611 (1978). Municipalities may not be held liable under either a theory of respondeat superior or vicarious liability. *Oklahoma City v. Tuttle,* 471 U.S. 808, 817,

105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Doe v. Taylor Indep. School Dist.,* 15 F.3d 443, 452 (5th Cir.) (en banc), *cert. denied,* 513 U.S. 815, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994). They also may not be held liable under § 1983 for mere negligence in oversight. *Rhyne v. Henderson Cty.,* 973 F.2d 386, 392 (5th Cir.1992) (citing, *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)). Nonetheless, prison officials may not ignore obvious dangers to inmates. *Farmer v. Brennan,* 511 U.S. 825, 826, 114 S.Ct. 1970, 1973, 128 L.Ed.2d 811 (1994).

■ Therefore, in order to hold a municipality liable, a plaintiff must show that his or her constitutional deprivation was caused by the city's adoption of (or failure to adopt) the particular policy, and that such action went beyond mere negligent protection of the plaintiff's constitutional rights. *Hare v. City of Corinth, MS,* 74 F.3d 633 (5th Cir.1996).[1] That is, an alleged inadequacy in a municipal policy must amount to "an intentional choice, not merely an unintentionally negligent oversight". *Id.*

■ When analyzing a § 1983 claim against a municipality, the Court must first decide if the City promulgated "an official policy, practice, or custom," which could subject it to § 1983 liability. *Monell,* 436 U.S. at 690–94, 98 S.Ct. at 2035–37. The Fifth Circuit has defined an "official policy" for the purposes of § 1983 liability to be either: 1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's law-making officers or by an official to whom the lawmakers have delegated policy-making authority; or 2) a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir.1984).

The facts of this case do not present an "official policy" under these definitions. There is no constitutional requirement that municipalities provide jailers and law enforcement personnel with sophisticated medical training so that they will detect hidden medical problems. The Fifth Circuit has applied this principle to the detection of suicidal tendencies in pretrial detainees:

> It is one thing to require a municipality to train its police officers to recognize and not ignore obvious medical needs of detainees with known, demonstrable and serious mental disorders. It is quite another to require as a constitutional minimum that a municipality train its officers to medically screen each pretrial detainee so that officers will unerringly detect suicidal tendencies. The latter requires the skills of an experienced medical professional with psychiatric training, an ability beyond that required of the average police officer by the due process clause.

*Burns v. City of Galveston, Texas,* 905 F.2d 100, 104 (5th Cir.1990), *disagreed with on other grounds, Hare,* 74 F.3d at 633.

■ Therefore, the City of Alvin was not required to train its jailers how to recognize the ambiguous signs of drug overdose. While a medical doctor might have recognized Morris' condition, the city and its jailers were not constitutionally required to provide such a high standard of care. Moreover, it cannot be inferred that any additional training of or screening by the jail staff would have *prevented* Mrs. Morris' drug overdose. At the time of her arrest, Mrs. Morris had *already* taken the overdose of drugs which later that afternoon caused her death. *See* Plaintiff's Original Complaint at para. 8. The fact that the effects of her overdose did not manifest themselves until after she had been taken into custody does not give rise to an action against the City.

■ Addressing Plaintiff's claim that the Defendant failed to provide Morris proper

---

**1.** *See also Colle v. Brazos Cty., TX,* 981 F.2d 237, 246 (5th Cir.1993) (concluding that "the ultimate question is whether Brazos County adopted policies creating an obvious risk that pretrial detainees' constitutional rights would be violated");

*Rhyne,* 973 F.2d at 392 ("while the municipal policy maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight.").

807

medical care, the Court finds that as a matter of law the Defendant's policies neither deprived Morris of adequate medical assistance, nor violated the Fourteenth Amendment's required level of care. Taken in its most favorable light, if all of the facts in Morris' Original Complaint are true, the Defendant did in fact provide Morris with prompt medical care on two occasions during her short stay. The jailers called EMS teams to the jail to administer to Mrs. Morris on both occasions of her manifestation of problems. The moment that Mrs. Morris began to exhibit physical symptoms of a serious medical problem EMS personnel were called and Mrs. Morris was transferred to the hospital. Based upon these facts, the Court finds as a matter of law that the Defendant's policies neither deprived Mrs. Morris of adequate medical assistance, nor violated the Fourteenth Amendment's required level of care. Any claims pertaining to insufficiency of the medical care provided may only be considered as a potential violation of state tort law.

Accordingly, while the Court recognizes that Mrs. Morris' death was unfortunate and any death occurring while in custody raises legitimate concerns, even assuming the truthfulness of the allegations in Plaintiffs' Complaint, the Plaintiffs' can prove no set of facts in support of their § 1983 claims that would entitle them to relief. The Motion to Dismiss all federal § 1983 claims is **GRANTED**, and those claims are hereby **DISMISSED WITH PREJUDICE**. The Court declines to exercise its supplemental jurisdiction over the Plaintiffs' state law claims, and those claims are hereby **DISMISSED WITHOUT PREJUDICE**. All parties are to bear their own costs herein to date.

**IT IS SO ORDERED.**