**Jennie DRAIN, Individually and as Administratrix Estate of Joe D. Drain, and Shelly Drain Smith, Individually and as Heir to the Estate of Joe Drain**

v.

**GALVESTON COUNTY, City of League City, and Constable Daniel Cooper, Individually and in His Official Capacity.**

No. CIV. A. G–97–316.

United States District Court,
S.D. Texas,
Galveston Division.

March 30, 1998.

James Montgomery Bennett, Dickinson, TX, for Jennie Drain.

James Russell Tucker, Dallas, TX, Richard G. Mills, Dallas, TX, for Shelly Drain Smith, Joe Don Drain.

Donald S. Glywasky, Galveston County Legal Dept., Galveston, TX, for Galveston County, Daniel Cooper.

William Scott Helfand, Magenheim Bateman Robinson Wrotenbery and Helfand, Houston, TX, for City of League City.

### ORDER REGARDING MOTIONS FOR SUMMARY JUDGMENT

KENT, District Judge.

Joe Drain shot his wife with a pistol during a domestic dispute on December 26, 1995. Apparently recognizing that he had made a severe error in judgment, Mr. Drain then called 911 and reported that he had shot his wife. Three League City patrol officers responded to the 911 call, along with Constable Daniel Cooper of the Galveston County Constable's Office. Constable Cooper responded pursuant to a Mutual Aid Agreement (the "Agreement") between himself and League City. When the officers arrived at the Drain home, Joe Drain, his wife Jennie Drain, and the couple's daughter were inside the house and the door was locked. It appears that there was then a standoff between the police and Joe Drain, who at first would not allow anyone to come inside and would not surrender because he was afraid of being shot by the police.

Detective Marty Grant of the League City Police Department made phone contact with Mr. Drain and persuaded him to come outside so that his wife could be treated without further delay. With Detective Grant's constant assurances to Drain that if he came outside he would not be shot, Drain stepped outside, holding a pistol in one hand, aimed at his own head, and his cordless phone in the other hand. Joe Drain walked down his sidewalk to the driveway and approached his car. The evidence varies as to whether Drain kept the gun to his own head at that time, or whether he lowered his arm and/or aimed the gun at other officers. Undisputedly, however, soon after Drain emerged from the house, Constable Daniel Cooper shot Joe Drain five times. Joe Drain died as a result of the gunshot wounds inflicted by Constable Cooper.

Jennie Drain recovered from her injuries, and brought this action individually and as Estate Administratrix of her late husband, alleging violations of 42 U.S.C. § 1983 and common law and state law negligence claims. Plaintiff Shelly Drain Smith, Joe Drain's daughter from a previous marriage, brings a wrongful death claim asserting constitutional violations identical to those asserted by Jennie Drain and Joe Drain's estate. Claims against Galveston County, against Daniel Cooper in his official capacity, and of negligence under the Texas Tort Claims Act have been dismissed by previous Orders of this Court, entered October 6, 1997 and November 10, 1997. Furthermore, Jennie Drain's claims were voluntarily dismissed by the Court's Order Granting her Motion for Nonsuit, entered January 13, 1998.[1] Now before the Court are the Motions for Summary Judgment of Defendant Daniel Cooper and of Defendant City of League City, dated January 16 and January 20, 1998, respectively. For the reasons stated below, Defendant Cooper's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART.** League City's Motion for Summary Judgment is **DENIED.**

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by pointing out to the Court that there is an absence of proof on any essential element of the nonmovant's case. *Id.*, 477 U.S. at 325, 106 S.Ct. at 2554.

Once the movant's burden is met, the summary judgment burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but must instead come forward with specific facts to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citing FED. R. CIV. P. 56(e)). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported mo-

---

1. Jennie Drain filed this action individually and in her capacity as Executrix of Joe Drain's estate. She was subsequently removed as Executrix of the estate by the Probate Court. Although her individual claims have been dismissed from this action without prejudice, the claims on behalf of Joe Drain's estate remain. Thus, Joe Drain's estate and Shelly Drain Smith are the two Plaintiffs remaining in this action. The Plaintiff estate is referred to herein simply as "Drain," or collectively with Drain Smith as "Plaintiffs."

tion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.

## II. DEFENDANT COOPER'S MOTION FOR SUMMARY JUDGMENT

### A. *Section 1983 claims*

Defendant Cooper moves for summary judgment of the section 1983 claims against him on two grounds: first, that there was no Fourth Amendment violation; and second, that Cooper is entitled to qualified immunity.

### 1. *Claims of Excessive Force*

 Cooper first alleges that because his actions were reasonable in light of the situation, he did not violate Joe Drain's Fourth Amendment rights. A deadly force claim under section 1983 is a federal constitutional claim, and is analyzed according to the Fourth Amendment's reasonableness standard. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). The Fifth Circuit has established a three-part test for excessive force claims under section 1983. The Plaintiff in such cases must show "(1) a significant injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Johnson v. Morel,* 876

F.2d 477, 480 (5th Cir.1989) (en banc) (footnote omitted).

 The only argument raised in Cooper's Motion is that Cooper's use of deadly force was objectively reasonable under the circumstances. In support of this argument, Cooper cites primarily his own affidavit and 1997 deposition. According to Cooper's Motion, Drain exited the house with a gun in his hand, waving it in the direction of the officers. Drain then disregarded the commands of the officers to put the gun down, and when an officer on Cooper's right began to move, Drain started moving his gun-holding arm in a way that Cooper deemed threatening to his safety and the safety of the other officers on the scene. Cooper claims that only when he perceived an immediate threat to safety did he make the "split-second" decision to fire.

Affidavits and depositions of other witnesses, submitted with Plaintiffs' Responses, recite versions of the events that differ from Cooper's rendition. For instance, Officer Randy Ward, who was also on the scene, testified in his deposition that Drain was pointing the pistol at his own head when Cooper shot him. Detective Martin Grant, who was on the phone with Drain at the time of the shooting, testified that another officer told him right after the shooting, while the two were staring at Drain's body, that Drain had the gun pointed at himself when he was shot by Cooper. Even Cooper's own testimony is unclear as to the exact location of Drain's gun and the nature of his arm movements at the time of the shooting. Cooper's deposition testimony[2] indicates that Drain may have been pointing the gun at Cooper when Cooper fired, while Cooper's affidavit indicates that Drain began to move his arm to aim at Officer Ward.[3]

2. There are two depositions of Cooper attached with Joe Drain's Response to the Motion for Summary Judgment; one was taken in January 1995, and another was taken in December 1997.

3. Cooper has filed objections to the expert testimony submitted with Plaintiff Joe Drain's Response to his Motion. Cooper objects that the affidavit of a criminal law professor is "admissible under FED. R. CIV. EVID. 704" because the affidavit contains legal conclusions. If Cooper concedes that the affidavit is admissible under Rule 704, the Court fails to recognize his objection. Presumably Cooper intended to argue that the affidavit is *in* admissible under Rule 704. He

also objects to the credentials of the other two experts submitting affidavits. Because none of these expert affidavits were relied upon by the Court in its decision, Cooper's objections are **DENIED.** Plaintiff's counsel is warned, however, that this Court is the ultimate adjudicator of the law, and has no need of the opinions of "legal experts." Furthermore, as any "expert" in the law should be well aware, expert testimony is allowed only to help the trier of fact determine *facts* in issue, not legal issues. FED. R. CIV. P. 702.

Cooper further objects to the Plaintiff's Response because it was served on Defendants

■ The proper application of the Fourth Amendment's reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871. In this case, the facts necessary to determine whether Cooper's actions were objectively reasonable are in hot dispute, as shown by the depositions and affidavits of the officers who witnessed the events firsthand. The conflicting statements create a genuine issue of material fact, which precludes summary judgment on Plaintiffs' excessive force claims against Cooper. Cooper's Motion for Summary Judgment on the excessive force claims is therefore **DENIED.**

### 2. *Qualified Immunity*

■ Cooper also claims that he is entitled to qualified immunity. Qualified immunity protects government officials from liability for conduct in the course of their official duties unless the alleged conduct violated clearly established law of which a reasonable public official would have been aware. *Gunaca v. State of Texas*, 65 F.3d 467, 473 (5th Cir.1995); *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir.1995). The Court must determine whether "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity is a question of law, to be decided by the Court. *See Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991). The Court finds the evidence presented by the

summary judgment record sufficient to defeat qualified immunity. If the facts are as Officer Ward and Detective Grant claim, a reasonable official should have realized that shooting five times at a person holding a gun to himself is a violation of that person's Fourth Amendment rights.

Accordingly, for the reasons stated above, Defendant Cooper's Motion for Summary Judgment on Plaintiffs' section 1983 claims is **DENIED.**

### B. *Negligence Claims Against Defendant Cooper*

■ Cooper next moves for summary judgment of the negligence claims against him. The Court has previously dismissed Plaintiff's state law claims of negligence against League City because a plaintiff cannot pursue pendent state claims under the Texas Tort Claims Act where they are based on a single event, an event alleged under a contemporaneous § 1983 cause of action to be an intentional tort. *See, e.g., Taylor v. Gregg*, 36 F.3d 453, 457 (5th Cir.1994). Because Plaintiff has repeatedly alleged that Constable Cooper's actions constitute intentional torts, Plaintiff cannot now simply plead that the City was negligent in order to support additional state law negligence claims.[4] Accordingly, any remaining claims against Cooper in his individual capacity under the Texas Tort Claims Act are **DISMISSED WITHOUT PREJUDICE.**[5]

### III. LEAGUE CITY'S MOTION FOR SUMMARY JUDGMENT

■ Defendant League City also moves for summary judgment, arguing first that the City cannot be held liable for Cooper's actions because Cooper is a County employee rather than a City employee, and that the

three days after it was served to the Court. The Response to the Court was timely. Cooper's objection is once again **DENIED.**

4. The negligence claims are dismissed on this basis only. Although Cooper argues that he is entitled to official immunity from these claims, he is wrong. Official immunity requires that the officer was acting in good faith, which in turn requires conduct in accordance with what a reasonably prudent officer would have done. *See Travis v. City of Mesquite*, 830 S.W.2d 94, 104

(Tex.1992) (Cornyn, J., concurring). As the Court has already found, there is a fact issue as to whether Cooper's actions are objectively reasonable. Therefore, he is not entitled to official immunity.

5. The Court is aware that Plaintiffs have already filed an action in state court asserting their negligence causes of action. This Order should in no way interfere with the adjudication of that case.

City had no control over his actions. The Court acknowledges that Cooper is indeed an elected official of Galveston County, and the Plaintiff does not dispute this. Rather, Plaintiff argues that, pursuant to the Mutual Aid Agreement, Constable Cooper was at the scene at the request of the City, and that the City's policy of enabling Cooper to respond to emergency situations as backup for League City officers caused the deprivation of Joe Drain's civil rights.

The facts regarding the reason for Constable Cooper's presence at the Drain home on the night of December 26, 1995, are undisputed. Constable Cooper was patrolling in his car that night and heard the dispatch call regarding the Drain situation over the radio supplied to him by League City. Cooper regularly intercepted broadcasts from the League City Police Department, and would radio in to offer his assistance. According to Cooper's testimony, the dispatcher for the League City Police Department would clear him to the scene if League City needed him to respond, and would tell him to "disregard" if the City did not want his aid. In this particular case, the dispatcher cleared Cooper to the scene.

As a constable for Galveston County, Cooper has law enforcement jurisdiction over League City. However, the facts clearly indicate that League City enabled Cooper to respond to the Drain situation by providing him with a radio by which he could pick up the League City broadcasts, and then cleared his presence there. Therefore, the issue for the Court to determine is whether a city can be liable for the conduct of a county constable who responds to a call by the city police department using city radio equipment, after being cleared to respond by the city, even though the city is located within the county over which the constable already has jurisdiction.

Although the City heavily emphasizes the fact that Cooper has jurisdiction over League City anyway, the fact remains that without the radio which League City provided Cooper, and without League City's clearance, Cooper would not have been at the Drain home. Furthermore, the Agreement that governed the interactions between Constable Cooper and League City at the time of the Drain incident provided that:

> While any law enforcement officer regularly employed by the providing party is in the service of a requesting party pursuant to this Agreement, *he shall be a peace officer of such requesting party* <u>*and be under the command of the law enforcement officer of the requesting party who is in charge.*</u> The officer shall have all the powers of a regular law enforcement officer as though he were within the jurisdiction where he is regularly employed[;] however, if any third party files a legal claim alleging negligence on the part of such officer or damage to person or property caused by such officer or any other type of misconduct on the part of such officer while in the service of the requesting party, such shall be considered to have been in the employ of the providing party when the misconduct occurred and the providing party shall be responsible for defending and payment, if any, of all claims stemming from the act resulting in such damage.

Agreement at 1–2 (emphasis added). According to the clear language of the Agreement, the Court finds League City's argument that it had no control over Cooper to be patently meritless. League City clearly had such control, under the Agreement. While the City disingenuously argues that Cooper was not responding pursuant to the Agreement, because he had jurisdiction to respond anyway, the Court finds as a matter of law that the Agreement between the City and Cooper was intended to cover every situation in which the two entities interacted, and therefore that Cooper responded to the Drain call pursuant to the Agreement.

 Next, the Court must address the limitation of liability included in the Agreement. It seems to the Court that the City anticipated the possibility that Constable Cooper would get into situations such as this,[6] and therefore incorporated the quoted language to limit its liability against third

---

6. As discussed *infra,* Plaintiffs have introduced evidence showing that members of the League City City Council had knowledge of Cooper's roguish reputation.

parties in such instances. Essentially, the City argues that its agreement with Cooper affects the substantive ability of third parties to sue the City for its own wrongdoing. An agreement between two parties cannot serve to negate either party's legal duties to a third party. While this Agreement may prove to be an effective indemnification agreement between the City and Cooper, it cannot serve as the basis for summary judgment of the Plaintiffs' claims. Such a result would unfairly limit the parties from whom a third party tort victim could obtain relief. Moreover, Texas law provides that:

> While a law enforcement officer regularly employed by one county [or] municipality ... is in the service of another county [or] municipality ..., the officer is a peace officer of the latter county [or] municipality ... and is under the command of the law enforcement officer who is in charge in that county [or] municipality.... The officer has all the powers of a regular law enforcement officer of that county [or] municipality ... as fully as if the officer were in the county, municipality, or joint airport where regularly employed.

TEX. LOCAL GOV'T CODE § 362.003(a) (Vernon 1997). The City's attempt to change the law and the facts of this case because of the Agreement with their co-Defendant is utterly ridiculous and flatly not supported by the law.

■ Next, the City argues that the requirements for municipal liability under section 1983 have not been established. The City can be held liable for Cooper's actions if Plaintiffs have shown the existence of a custom or policy that led to the constitutional violation. The Supreme Court has held that, although municipalities are "persons" within the meaning of section 1983, they may not be held liable under a theory of respondeat superior or vicarious liability. *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690–94, 98 S.Ct. 2018, 2035–37, 56 L.Ed.2d 611 (1978). Instead, the allegedly unconstitutional action must be pursuant to a municipal policy of some nature. *Monell*, 436 U.S. at 691, 98 S.Ct. at 2036. Accordingly, to prove a claim for municipal liability under section 1983, a plaintiff must establish

the existence of a constitutional violation caused by a municipality's adoption, or failure to adopt, a particular policy, and that such action went beyond mere negligent protection of the plaintiff's constitutional rights. *Colle v. Brazos Cty., Tex.*, 981 F.2d 237, 246 (5th Cir.1993); *see Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649–50 (5th Cir.1996). In other words, the plaintiff must allege that the municipality acted intentionally or with deliberate indifference in carrying out the policy that led to the constitutional violation. A municipality may not be held liable solely for the actions of its non-policymaking employees where no policy is alleged to have caused the violation. Rather, a plaintiff must show that the execution of a municipality's policies or customs led to the constitutional violation. *Colle*, 981 F.2d at 244.

■ For a municipality to be liable, the plaintiff must establish either that the unconstitutional action was taken by a final policymaker of the municipality, or prove that the custom or policy affirmatively links the municipality to and directly caused the constitutional violation alleged. *See Colle*, 981 F.2d at 244; *Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir.1995). Defendant League City argues in its Motion for Summary Judgment that the Court cannot find liability because Plaintiffs have not sufficiently proved a direct causal link between the City's policy of allowing Cooper to respond to emergency calls and Cooper's decision to shoot in this case. League City advances the position that the City may only be liable if Cooper knew that his decision would be approved by the City, and if the decision was actually caused by the City's policy.

Case law does not support, and the Court refuses to subscribe to, the City's strict interpretation of causation for section 1983 purposes. According to the City's reasoning, liability could not be predicated upon any policy short of the City Council actually pulling the trigger. Such a rigorous standard would virtually eviscerate municipal liability based on custom or policy under section 1983. Furthermore, League City has misinterpreted the only authority cited in its brief to support its narrow interpretation. The City claims that *Palmer v. City of San Anto-*

*nio,* 810 F.2d 514 (5th Cir.1987), requires that the police officer act with knowledge that his action will be approved by City policymakers. In *Palmer,* however, the Fifth Circuit merely stated that in a failure to train case, such knowledge would establish causation. *Id.* at 516. It is not the only way to establish causation, nor does it apply to the causation standards for policies other than failure to train. Similarly, the City asserts that *Palmer* states that "[i]t is not enough that the City could, but does not, reduce the risk of harm to the plaintiff." *Id.* at 516. This statement was also made in the context of failure to train cases.[7]

However, in this case the Plaintiffs must only show that the City's policy of allowing Cooper to respond to delicate emergency situations was a "moving force" behind the constitutional violation. In this case, Cooper was enabled to respond and cleared to the scene by League City. The Court finds that Plaintiffs have proffered sufficient evidence for the trier of fact to find that the Mutual Aid Agreement was the moving force behind Cooper's presence at the scene, and the subsequent shooting.

 Next, the City argues once more that Plaintiffs have failed to show more than a single, isolated incident. An isolated incident is not sufficient to show that a custom exists for section 1983 purposes. *Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir.1984) (en banc); *Palmer,* 810 F.2d at 516. Although the Mutual Aid Agreement itself is not unconstitutional, Plaintiffs have established facts which tend to show that League City deliberately continued a policy of empowering Constable Cooper to respond to potentially dangerous and explosive situations knowing that he had a history of constitutional violations. Plaintiffs have submitted the affidavits of City Council members who stated that the City Council was aware of

Cooper's history of abusive and unconstitutional tactics when it entered into the Mutual Aid Agreement. For instance, Cooper had a history of routinely using his gun when it was unnecessary, exceeding the bounds of his jurisdiction, and had been accused of many other episodes of using excessive violence against citizens. Furthermore, the evidence shows that League City did not revoke the Mutual Aid Agreement after the incident, but allowed it to continue for seven months after the Drain incident until its three-year term was up. The City's reaction to the incident constitutes some proof that League City condoned Cooper's manner of handling explosive situations. *See Grandstaff v. City of Borger,* 767 F.2d 161 (5th Cir.1985).

Because Plaintiffs have established facts which tend to show that the City's policy of allowing Cooper to respond to emergency situations caused the shooting of Joe Drain, and that League City should have been aware of Cooper's nature, there exist genuine issues of material fact regarding the City's liability in this case.[8] Accordingly, League City's Motion for Summary Judgment is **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment of Defendant Cooper is **GRANTED** with respect to Plaintiffs' state law negligence claims, and those claims are **DISMISSED WITHOUT PREJUDICE.** Cooper's Motion for Summary Judgment is DENIED with respect to the remainder of Plaintiffs' claims. Defendant League City's Motion for Summary Judgment is **DENIED.** The parties are instructed to file nothing further with respect to the above issues, including motions to reconsider and the like, unless supported by compelling new evidence not available at the time of the instant submissions. All parties are **OR-**

---

7. While the Court finds that genuine issues of material fact are pervasive as to all policies asserted by Plaintiffs, its decision to deny summary judgment is predicated upon the policy of allowing Cooper to respond pursuant to the Mutual Aid Agreement. The other proof established by Plaintiffs, *e.g.* failure to train, failure to supervise, and condoning excessive force, buttress the City's liability. However, because summary judgment must be denied under the policy of allowing Cooper to respond, the Court does not rule on the City's liability under these latter policies individually.

8. Because summary judgment must be denied on the above basis, the Court declines to address the sufficiency of the summary judgment evidence on the other policies alleged by the Plaintiffs.

DERED to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**