**Beth L. MARTIN, Individually, and as Next Friend of Matthew Jordan Martin, a Minor and as Personal Representative for the Estate of James F. Martin, Deceased,**

v.

**CITY OF LEAGUE CITY, William Schultz, Chris Reed, Jaime Castro, James Maynard, III, Elisabeth Hernandez, Donna Hacker, Albert Dunaway, III, and Unknown Employees, Officers and/or Agents of City of League City.**

No. Civ.A. G–98–266.

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 30, 1998.

Alton C. Todd, Alvin, TX, for Beth L. Martin, Matthew Jordan Martin, James F. Martin.

William Scott Helfand, Magenheim Bateman Robinson, Houston, TX, for City of League City, William Schultz, Chris Reed.

Barry C. Willey, Galveston County, Legal Dept., Galveston, TX, for Jaime Castro.

Joseph Robert Messa, Ables Locker Ralls and Cowen, Houston, TX, for James Maynard, III, Donna Hacker, Albert Dunaway, Richard James Hernandez a/k/a, Rick Hernandez.

### ORDER

KENT, District Judge.

Plaintiffs, alleging violations of the Eighth and Fourteenth Amendments of the United States Constitution, bring this action pursuant to 42 U.S.C. § 1983 and Texas Wrongful Death and Survivorship statutes. Now before this Court are Defendant police officers Schultz and Reed's and the City of League City's Motions to Dismiss, filed August 5, 1998, and September 16, 1998, respectively. For the reasons stated below, the Motions to Dismiss are **GRANTED**. Additionally, the Court *sua sponte* **DISMISSES ALL CLAIMS** against the remaining Defendants—Jaime Castro, James Maynard, III, Richard Hernandez, Donna Hacker, Albert Dunaway, III, and unknown employees, officers and/or agents of City of League City. Plaintiffs' § 1983 claims against all Defendants are **DISMISSED WITH PREJUDICE**. To the extent that Plaintiffs' complaint asserts pendent state law claims for the wrongful death of the decedent resulting from Defendants' alleged negligence, this Court exercises its discretion to decline supplemental jurisdiction over those causes of action. Any and all state law claims against all Defendants are **DISMISSED WITHOUT PREJUDICE**.

### I.  FACTUAL BACKGROUND

Plaintiffs are the widow and son of James F. Martin, Decedent. Mr. Martin tragically died as a result of a suicide committed on August 23, 1996. On August 22, 1996, Defendant police officers and Defendant volunteer EMS personnel responded to a call at the Plaintiffs' home relating to Decedent's irrational, disoriented, and violent behavior. Plaintiff Beth Martin, the widow of Mr. Martin, alleges that she told the Defendant police officers and Defendant EMS personnel that Mr. Martin had a history of mental difficulties. Plaintiff also alleges that she told the officers and EMS personnel that Decedent had been having an animated conversation with his deceased mother and had been acting otherwise irrationally. Plaintiff alleges that Mr. Martin appeared to be intoxicated, disoriented, violent, and suffering from severe mood swings.

The officers and/or EMS personnel called the Gulf Coast Center, commonly referred to as Mental Health Mental Retardation (MHMR), for assistance in responding to the incident. After reporting Decedent's condition, Plaintiff alleges that the officers and/or EMS personnel directed Ms. Martin and her minor son to leave the premises. Later in the day the officers and EMS personnel left the premises, allegedly leaving Decedent alone without completing a full assessment of him and without taking him to a medical facility. Ms. Martin and her son did not return home that night. The following day Mr. Martin was discovered dead in the Martin home, a victim of self-inflicted carbon monoxide poisoning.

### II.  ANALYSIS

This Court wishes to begin by expressing its profound and heartfelt sympathy for the loss suffered by Ms. Martin and her son as a result of the tragic death of Mr. Martin. It is, however, the regrettable obligation of this Court to view the claims pled by Ms. Martin and her son in light of the cold, hard facts presented in the pleadings and the governing law. Unfortunately in this case no amount of sympathy or compassion can transform the facts and allegations contained in these pleadings into compensable federal causes of action. While Plaintiffs may ultimately be able to show a compensable state law tort, the Court can simply find no basis whatever for a valid cause of action against any Defendant under § 1983 for violations of Mr. Martin's civil rights.

The Court recognizes that Plaintiffs' Counsel is confronted with an extremely poignant and difficult case. The Court commends Plaintiffs' Counsel on his zealous advocacy for the Martins, but no doubt in his well-meaning efforts to assert causes of action

that would support compensable claims, Plaintiffs' Counsel has blurred the line between causes of action for violations of federal civil rights under 42 U.S.C. § 1983 and state negligence law. For the benefit of Plaintiffs, the Court will construe Plaintiffs' Complaint as pleading causes of action pursuant to 42 U.S.C. § 1983 for violations of Decedent's civil rights and separate causes of action under state law for the negligent infliction of his death. The Court will address the former exclusively, leaving the latter for consideration by an appropriate court, in due course.

### A. Standard of Review

When considering a Motion to Dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the Complaint, and views them in the light most favorable to the Plaintiffs. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir.1993). Such motions should be granted only when it appears without a doubt that the Plaintiffs can prove no set of facts in support of their claims that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir .1994).

### B. § 1983 Claims Against Individual Defendants

■ The first inquiry in § 1983 cases is whether a Constitutional right has been infringed. In this case, Plaintiffs allege that Defendants violated Decedent's Fourteenth Amendment right to substantive due process. Plaintiffs' theory is that the Defendants knowingly placed Mr. Martin in danger and, under the Due Process Clause, were therefore obligated to protect him from foreseeable injuries resulting from Defendants' conduct. The dangerous situation allegedly resulting from Defendants' conduct was the "cutting off [of] a potential source of aid [to Mr. Martin] by having his wife and child leave him alone in his home." Once Ms. Martin and her son were instructed to leave the premises, Plaintiffs allege that the State had an affirmative duty under the circumstances to protect Decedent from himself, either by taking him into custody or by securing the return of Mrs. Martin and her son

so that they could somehow prevent Mr. Martin from committing suicide.

■ The facts presented clearly do not state a cause of action under the Due Process Clause of the Fourteenth Amendment. The United States Supreme Court spoke authoritatively on this matter in *DeShaney v. Winnebago County Dep't of Soc. Serv.,* 489 U.S. 189, 195, 200, 109 S.Ct. 998, 1003, 1005–06, 103 L.Ed.2d 249 (1989). There the Court opined:

> A State's failure to protect an individual against private violence generally does not constitute a violation of the Due Process Clause, because the Clause imposes no duty on the State to provide members of the general public with adequate protective services. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security[.] ... There is no merit to petitioner's contention that the State's knowledge of his danger and expressions of willingness to protect him against that danger established a "special relationship" giving rise to an affirmative constitutional duty to protect.... [T]he affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitations which it has imposed on his freedom to act on his own behalf, through imprisonment, institutionalization, or other similar restraint of personal liberty.

In other words, a State's affirmative duty to protect a particular citizen does not arise unless the State restrains that citizen's liberty. In this case, Plaintiffs plead no facts or allegations to suggest that Mr. Martin was taken into custody, institutionalized, imprisoned, or had his liberty restrained in any way; therefore, as a matter of law, Plaintiffs fail to state a claim for violations of the Fourteenth Amendment.

In an attempt to avoid dismissal of their Complaint, Plaintiffs refer to the "state created danger theory," but they cite no Fifth Circuit cases where state actors were found to have violated a victim's Due Process rights under such a theory. The only post-*Deshaney* case cited by Plaintiffs allowing such a

cause of action is *Wood v. Ostrander*, 879 F.2d 583 (9th Cir.1989). In that case, the United States Court of Appeals for the Ninth Circuit reversed a summary judgment granted for the State. A patrol officer had arrested the driver of a car and allegedly knowingly left the female passenger stranded at night near a high crime area. The female passenger was subsequently raped by a man from whom she accepted a ride. As the Ninth Circuit pointed out, the defendant police officer's actions caused the danger by leaving the woman stranded and common sense would have alerted anyone to the danger of her situation. The facts of Plaintiffs' case are not analogous. The Defendant police officers, volunteer EMS personnel, and MHMR representative who was contacted by phone, in no way caused Mr. Martin's psychological problems or his death; nor could they have been expected to recognize Mr. Martin's latent suicidal tendencies. *See Burns v. The City of Galveston*, 905 F.2d 100 (5th Cir.1990) (police personnel are not required to "unerringly detect suicidal tendencies"; such an exacting standard "requires the skill of an experienced medical professional with psychiatric training"). Plaintiffs' Fourteenth Amendment claims are therefore **DISMISSED WITH PREJUDICE** against all Defendants.

█ Plaintiffs claims of Eighth Amendment violations are also dismissed as a matter of law. The Eighth Amendment's protection extends only to those who have been convicted of a crime, and is concerned with the State's power to punish after an individual has been adjudicated guilty. *See DeShaney*, 489 U.S. at 199 n. 6, 109 S.Ct. at 1005 n. 6 (1989) The Eighth Amendment clearly does not apply to the facts of this case. Accordingly, Plaintiffs' Eighth Amendment claims under § 1983 are **DISMISSED WITH PREJUDICE** against all Defendants.

C. *§ 1983 Claims Against the City of League City*

█ To properly plead a violation of § 1983 against a municipality, there must have been an allegedly unconstitutional action carried out pursuant to an official municipal policy of some nature. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Plaintiffs have failed to allege any Constitutional violations thus the claims against the City of League City for failure to adequately train personnel and institute appropriate policies regarding the mentally ill or suicidal must fail as matter of law. Nevertheless, because the Court is troubled by Plaintiffs' implication that a City should be responsible for training its law enforcement and volunteer EMS personnel in the area of advanced psychiatry, the Court will further comment on this particular cause of action.

The Fifth Circuit has defined an "official policy" for the purposes of § 1983 liability to be either: 1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's law-making officers or by an official to whom the lawmakers have delegated policy-making authority; or 2) a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir.1984); *Morris v. City of Alvin, Texas*, 950 F.Supp. 804, 806 (S.D.Tex.1997). The facts of this case do not present an "official policy" under these definitions. There is axiomatically no Constitutional requirement that municipalities provide police or EMS personnel with sophisticated medical training so that they will detect hidden medical problems. The Fifth Circuit has applied this principle to the detection of suicidal tendencies in pretrial detainees:

> It is one thing to require a municipality to train its police officers to recognize and not ignore obvious medical needs of detainees with known, demonstrable and serious mental disorders. It is quite another to require as a Constitutional minimum that a municipality train its officers to medically screen each pretrial detainee so that officers will unerringly detect suicidal tendencies. The latter requires the skills of an experienced medical professional with psychiatric training, an ability beyond that required of the average police officer by the due process clause.

*Burns,* 905 F.2d at 104, *disagreed with on other grounds, Hare v. City of Corinth,* 74 F.3d 633 (Fifth Cir.1996); *Morris,* 950 F.Supp. at 806.

The Court is particularly concerned by Plaintiffs' assertions in this case in light of the facts of a recent case decided by this Court. *See Drain v. Galveston County,* 999 F.Supp. 929 (S.D.Tex.1998); *Drain v. Galveston County,* 979 F.Supp. 1101 (S.D.Tex. 1997). In that case, the plaintiffs were the wife and daughter of the decedent, Joe Drain. They asserted § 1983 claims against the City of League City and a constable for the shooting death of Mr. Drain. The shooting occurred after police responded to Mr. Drain's 911 call reporting that he had shot his wife, Mrs. Drain, several times. A police detective persuaded Mr. Drain to come outside the home (which he did carrying a gun), and the constable shot and killed Mr. Drain believing him to pose a threat to the family inside and to the police. There the plaintiffs, Mrs. Drain and her daughter, sued the City for Mr. Drain's wrongful death resulting from the affirmative acts of the police to protect them. In the instant case, had the police not advised the Plaintiffs to leave, presumably for their protection, Plaintiffs could well be suing the City for injuries they or Mr. Martin sustained in violent altercations resulting from their remaining on the premises. Under the instant Plaintiffs' theory, the Defendants would be "damned if they did and damned if they didn't." Furthermore, Plaintiffs assert that the police or EMS personnel had an obligation to notify them to return home. Surely Plaintiffs could have taken affirmative steps, simply calling the police department for example, or Mr. Martin himself, to discover how the incident had been resolved. Reason and fairness dictate that there must be some end to the Government's liability in these types of situations.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' § 1983 claims are **DISMISSED WITH PREJUDICE** against all Defendants. Any state law claims asserted by Plaintiffs are **DISMISSED WITHOUT PREJUDICE** in order to allow the Plaintiffs to review their case carefully with their attorney at this time. Should the Plaintiffs and their counsel feel that their state law negligence claims have greater viability than their federal § 1983 claims, they are free to pursue them in state court, being mindful of applicable limitations periods. The parties are instructed to file nothing further regarding this matter in this Court, including motions to reconsider and the like, unless *compelling* evidence reveals that such consideration is warranted. All parties are **ORDERED** to bear their own costs and attorney's fees incurred to date.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons stated in the Court's Order entered this date, all § 1983 claims against all Defendants are **DISMISSED WITH PREJUDICE.** All state law claims asserted by Plaintiffs against all Defendants are **DISMISSED WITHOUT PREJUDICE.** All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**IT IS SO ORDERED.**