**Bruce W. and Wanda G. SMITH Individually and as Representative of the Estate of Justin Wayne Smith, Deceased, and Krista Smith**

v.

**Byron Keith BLUE acting individually and in his official capacity, Robert Allen Wynn acting individually and in his official capacity, and Harris County.**

No. Civ.A. G–99–091.

United States District Court,
S.D. Texas.

May 27, 1999.

Valorie W Davenport, Houston, TX, for Bruce W Smith, Wanda G Smith, Krista Smith, Justin Wayne Smith, plaintiffs.

David Simmons Masquelette, Assistant County Attorney, Houston, TX, for Byron Keith Blue, Robert Allen Wynn, Harris County, defendants.

Byron Keith Blue, Houston, TX, pro se.

### *ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR FAIL-URE TO STATE A CLAIM*

KENT, District Judge.

This case arises from the suicide of teenager Justin Wayne Smith, who hanged himself while in custody at Delta 3 Boot Camp, a juvenile detention center operated by Harris County. Plaintiffs, the parents of the deceased juvenile, filed this action asserting claims under 42 U.S.C. § 1983 and the Texas Tort Claims Act, Tex.Civ. Prac. & Rem.Code Ann. § 101.001 *et seq.*, against individual Defendants Byron Blue ("Blue") and Robert Wynn ("Wynn") and Harris County. Now before the Court is Defendant Harris County's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted. For the reasons set forth below, Defendant Harris County's Motion is **DENIED.**

### *I. FACTUAL SUMMARY*

On May 12, 1997, Justin Wayne Smith was ordered confined at Harris County's Juvenile Detention Westside Command Center, known as Delta 3 Boot Camp, for violating his probation by missing curfew. At the time of his detention, Justin had been diagnosed as suffering from severe depression and attention deficit disorder. This diagnosis was apparently confirmed by subsequent evaluations by Harris County medical personnel early during Justin's detention at Delta 3. Justin's physicians placed him on Prozac and other medications and recommended that he be treated by a therapist.

During his four-month stay at Delta 3, Justin allegedly threatened suicide and physically harmed himself on several occasions. Plaintiffs allege that Delta 3 personnel were aware of both Justin's condition and his suicide threats yet took no precautions to ensure that he did not follow through on his threats. Justin's behavior apparently worsened to the point where by early September he refused to even come out of his cell and take part in the daily programs at Delta 3. He had also apparently begun hiding underneath his bed. Delta 3 personnel responded by placing Justin in solitary confinement for refusing to follow directions.

Despite Justin's recent behavior and previous suicide threats, Defendants allowed him to remain in the solitary confinement cell with several personal items, including a towel, T-shirts, athletic shoes with laces, and a bed sheet. At approximately 7:45 p.m. on September 2, 1997, Defendant Blue discovered Justin's body hanging from a loose sprinkler head in his cell. Around Justin's neck was a noose he had apparently fashioned from his bed sheet and attached to the sprinkler head.

Inspection reports read after Justin's death showed that Defendant Blue had performed visual checks on Justin every fifteen minutes until the discovery of Justin's body, in accordance with Harris County policy. However, subsequent investigation revealed that the inspection reports were altered after Justin's death to replace inspection records that showed the Defendants Blue and Wynne had performed visual checks every fifteen minutes up to and including 12 a.m., more than four hours after Justin's body was discovered. Under further investigation, Defendants Blue and Wynne admitted that it was routine practice at Delta 3 to fill out inspection reports beforehand to speed up paperwork. Investigators also determined that Justin had been dead for at least an hour before his body was discovered at 7:45 p.m., meaning that supervisors had not performed the fifteen-minute checks they were required to perform.

## II.  ANALYSIS

■ The Federal Rules of Civil Procedure authorize a court, upon suitable showing, to dismiss any action or claim within an action for failure to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 12(b)(6). When considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint, and views them in a light most favorable to the plaintiff. *See Malina v. Gonzales,* 994 F.2d 1121, 1125 (5th Cir. 1993). Unlike a motion for summary judgment, a motion to dismiss should be granted only when it appears without a doubt that the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994). The United States Court of Appeals for the Fifth Circuit has noted that dismissal for failure to state a claim is disfavored and will be appropriate only in rare circumstances. *Mahone v. Addicks Util. Dist. Of Harris County,* 836 F.2d 921, 926 (5th Cir.1988).

Plaintiffs bring claims under 42 U.S.C. § 1983 against individual Defendants Blue and Wynne and Harris County and under the Texas Tort Claims Act against Harris County. Defendant Harris County moves to dismiss all claims brought against it. The Court will address each of Plaintiffs' claims in turn.

### A)  *Plaintiffs' § 1983 Claims Against Harris County*

■ Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Johnston v. Harris County Flood Control Dist.,* 869 F.2d 1565, 1573 (5th Cir.1989). Before they can successfully assert § 1983 as a valid cause of action, Plaintiffs must first identify one or more specific constitutionally protected rights that have been infringed. *See Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).

■ To state a claim against Defendant Harris County, however, Plaintiffs must also allege a basis for municipal liability. It is well established that a municipality may be liable for the adoption of a

policy or custom that leads to a constitutional deprivation. *See Monell v. Dept. of Social Services,* 436 U.S. 658, 692–94, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978); *Burns v. City of Galveston,* 905 F.2d 100, 102 (5th Cir.1990); *Morris v. City of Alvin,* 950 F.Supp. 804, 806 (S.D.Tex.1997) (declaring that § 1983 does not "require as a constitutional minimum that a municipality train its officers to medically screen each pretrial detainee so that officers will unerringly detect suicidal tendencies."). The demonstration of a failure to train, or improper hiring, retention, and supervision, may be sufficient to establish such a policy or custom. *See City of Canton, Ohio v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989) (opining that "inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of the persons with whom the police come into contact"); *see also Board of the County Commissioner of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388–89, 137 L.Ed.2d 626 (1997) (declaring that "[i]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality … the plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."). The actions of the municipality *before* and *after* the event in question shed light on the actual policy or custom in existence.

■ Here, Defendant Harris County argues that Plaintiffs' Complaint does not include any allegation that a policy or custom of Harris County led to Justin Smith's death. Defendant buttresses that argument by referring to language in Plaintiffs' Complaint. Pointing to ¶ 20 of the Complaint, Defendant Harris County notes that the Complaint states that the failure of the individual Defendants to check on Justin every fifteen minutes was "in violation of Harris County's own policies and procedures."

Defendant's characterization of Plaintiffs' argument is misleading in its reliance on that brief excerpt. Throughout the Complaint, Plaintiffs specifically allege that the practice of pre-recording and then avoiding visual checks was so pervasive as to constitute a custom or policy, and that such a practice was the result of inadequate training. While municipal liability based on inadequate training is difficult to establish, Plaintiffs have alleged facts that support such a theory. Specifically, individual Defendants' admission that it was a routine practice to fill out inspection records beforehand, to save time on paperwork, and evidence that Defendants had lied about the visual checks even after the discovery of Justin's death provide support for that theory. Accordingly, the Court concludes that Plaintiffs have stated a claim against Defendant Harris County under § 1983. Plaintiffs clearly have alleged a violation of Justin Smith's Fourteenth Amendment right to medical protection against his own suicidal intentions. *See Rhyne v. Henderson County,* 973 F.2d 386, 391–92 (5th Cir.1992). Further, Plaintiffs have alleged that the violation was the result of a custom, practice, or policy of Harris County. Accordingly, Defendant Harris County's Motion to Dismiss is **DENIED** with respect to Plaintiffs' § 1983 claim.

### B) *Plaintiffs' State Law Claims Against Harris County*

Defendant Harris County makes two arguments that it cannot as a matter of law be held liable for the death of Justin Smith. First, it argues that Plaintiffs failed to state a claim under § 1983 and that as a consequence there is no basis for pendent jurisdiction over Plaintiffs' state law claims. As the Court has already held that Plaintiffs have stated a claim under § 1983, it need not address this argument. Defendant Harris County's second argument is that under Texas law, counties cannot be held liable for wrongful death.

Defendant Harris County argues that a cause of action for wrongful death is purely statutory and has never been extended to counties. In support, Defendant cites Tex.Civ.Prac. & Rem.Code Ann. § 71.001, the definitions subchapter of the Texas Wrongful Death Statute, which provides in relevant part:

(1) "Corporation" means a municipal, private, public, or quasi-public corporation other than a county or a common or independent school district.

Tex.Civ.Prac. & Rem.Code Ann. § 71.001(1). While Defendant has correctly read this subchapter of the Wrongful Death Statute, Defendant's argument that counties may not be sued for wrongful death ignores caselaw to the contrary. Section 71.001 does not exempt counties from liability for wrongful death under the waiver provisions of the Texas Tort Claims Act, Tex.Civ.Prac. & Rem.Code Ann. § 101.001 *et seq. See Whipple v. Deltscheff,* 731 S.W.2d 700, 704 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Under the Tort Claims Act, a government unit is liable for injury or death caused by a condition or use of tangible property to the same extent a private person would. *See* Tex.Civ.Prac. & Rem.Code Ann. § 101.021. Here, Plaintiffs allege that Justin Smith's death was in effect caused by the bedsheet left unsupervised in Justin's cell. Accordingly, the Court concludes that Plaintiffs have stated a claim for wrongful death under Texas law. Defendants' Motion to Dismiss is therefore **DENIED** with respect to such claim.

### III. CONCLUSION

The suicide of Justin Smith was a tragedy to both his family and his community. There is no way at this early stage for the Court to know what might have happened had events proceeded differently, but it is clear from the facts alleged in Plaintiffs' Complaint that many questions remain to be answered. Unfortunately for all parties involved, litigation in this case will be expensive and painful and ultimately cannot provide the one thing that could possibly restore the lives Plaintiffs once had. With those concerns in mind, the Court strongly encourages both parties to consider settlement in this case so that the process of healing may begin unburdened by the strains of litigation.

For the reasons set forth above, Defendant Harris County's Motion to Dismiss Plaintiffs' claims against it is **DENIED.** The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**